# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| L.W. INDIVIDUALLY AND AS PARENT AND NATURAL GUARDIAN OF C.W., A MINOR,<br>    Plaintiff,<br><br>  v.<br><br>LACKAWANNA COUNTY, PENNSYLVANIA, et al.,<br>    Defendants. | CIVIL ACTION NO. 3:14-CV-01610<br><br>(MUNLEY, J.)<br>(MEHALCHICK, M.J.) |

## MEMORANDUM

Now before the Court are a number of outstanding discovery matters raised in the Joint Motion to Extend Deadline and Request for Telephone Conference (Doc. 48), in the respective letters to the Court submitted by the parties, and at an in-person discovery conference held before this Court on May 12, 2015. While all pending discovery matters are fully ruled on in the conclusion section of this Memorandum and in the Order filed concurrently with this Memorandum, the Court addresses the two more contentious discovery matters at length herein.[1]

**I. DISCUSSION**

 A. EXCESS DEPOSITIONS

Plaintiffs seek to exceed the ten deposition limit imposed by the Federal Rules of Civil Procedure. To date, Plaintiffs have deposed four individuals, identified by Plaintiffs as key fact

---

[1] Given the sensitive nature of this case and the parties' extensive familiarity with the background and procedural history, the Court forgoes a detailed summary of this litigation for purposes of this Memorandum, opting instead to include only those facts relevant to the instant discovery disputes.

witnesses. In addition to the four individuals deposed, Plaintiffs have submitted a list of twenty-two proposed deponents, whose testimony they assert are necessary to substantiate their claims in this litigation. Rule 30(a)(2)(A) of the Federal Rules of Civil Procedure states that "[a] party must obtain leave of court, which shall be granted to the extent consistent with the principles stated in Rule 26(b)(2), if . . . a proposed deposition would result in more than ten depositions being taken . . . ." Fed.R.Civ.P. 30(a)(2)(A). When determining whether leave to conduct additional depositions is warranted, the Court must consider the factors outlined in Rule 26(b)(2), which provides:

> [T]he frequency or extent of use of the discovery methods otherwise permitted under these rules and by any local rule shall be limited by the court if it determines that (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit.

Fed.R.Civ.P. 26(b)(2)(C)(i)-(iii). *see also* Notes of Advisory Committee on 1993 Amendments ("Leave to take additional depositions should be granted when consistent with the principles of Rules 26(b)(2), and in some cases the ten-per-side limit should be reduced in accordance with those same principles."). "In other words, a party seeking more than ten depositions must overcome this presumptive limit by demonstrating that the additional depositions are reasonable and necessary." *Alaska Elec. Pension Fund v. Pharmacia Corp.*, No. CIV.A. 03-1519 (AET), 2006 WL 6487632, at *3 (D.N.J. Aug. 22, 2006)(citing Fed.R.Civ.P. 26(b));

The Court finds that Plaintiffs have made a particularized showing as to why all twenty-two additional depositions sought are reasonable and necessary, thus satisfying the standard

promulgated in Federal Rules 30(a)(2)(A) and (26)(b)(2). While averring that a case is "complex" alone is insufficient to justify deviation from the presumptive number of depositions, the Court is persuaded by Plaintiffs' proffered rationale that the breadth and complexity of this case naturally requires additional depositions, as these proposed deponents include former and current nonparty caseworkers, records custodians, and other individuals employed by Luzerne County Children & Youth with specific knowledge of and involvement in T.G.'s history of abuse, and the alleged perpetrated abuse of C.W. and R.M by T.G., which spans a lengthy period beginning with T.G.'s placement into the foster care system at the age of five up through the alleged abuse of C.W. and R.M.. In support of that position, counsel for the Plaintiffs have identified with specificity for the Court each proposed deponent's position and has described the relevance of his or her likely testimony based on the depositions already conducted and the documents reviewed by Plaintiffs' counsel. *Compare with Whittingham v. Amherst Coll.*, 163 F.R.D. 170, 171 (D. Mass. 1995)(denying plaintiff's motion for leave to exceed the deposition limit on the basis that plaintiff's "failure to indicate the number and/or names of the additional depositions sought ma[de] it difficult for the [c]ourt to measure the appropriateness of [p]laintiff's motion"). Accordingly, counsel for the Plaintiffs have shown no areas of significant overlap with respect to deponents' expected testimony and thus, have demonstrated that the discovery sought is not unreasonably cumulative or duplicative, or that the information sought could be obtained from a more convenient source. *See Alaska Elec. Pension Fund*, 2006 WL 6487632, at *5 (finding that while plaintiff's description of the likely testimony qualified as adequately "particularized," plaintiff's failed to show how each deposition would be necessary to their case.). Plaintiffs have not had an ample opportunity to obtain the information they seek

without the additional depositions, and in fact, have proactively sought leave from the Court early in the discovery phase. As Plaintiffs have justified the departure from the presumptive limit, this Court will permit Plaintiffs to conduct the proposed twenty-two depositions. However, if the discovery process later reveals that acquired deposition testimony will render the testimony from future scheduled depositions cumulative or duplicative, counsel for the Plaintiffs are encouraged to reduce the number of scheduled depositions to adhere to the standard articulated and embodied in Rule 26(b)(2).

    B. ATTORNEY-CLIENT PRIVILEGE

Defendants have informally moved to require Plaintiffs' production of three forms of communication that Plaintiffs assert privilege; namely, the fee/retainer agreements for the Plaintiffs, and two nonparty witnesses represented by Plaintiff's counsel, all notes taken by counsel at a group meeting between Plaintiffs and the two nonparty witnesses, as well as the right to inquire at deposition as to what was said at the group meeting between Plaintiffs, the non-party witnesses and counsel. Defendants argue that this communication is not privileged because such communication occurred during a "group meeting[ ] involving multiple clients [ ] who have divergent interests[,] . . . two of whom are critical non-party witnesses." Plaintiffs argue in response that this is an issue of "joint representation" and as such, any such communication between co-clients is shielded by the attorney-client privilege. (Doc. 53, at 2). No other objections or grounds for withholding production have been raised. Given the nature of this dispute, the Court address each form of communication at issue seriatim.

### 1. Fee/Retainer Agreements

With respect to the issue of whether attorney-client privilege applies to Defendants' request for the production of retainer/fee agreements, the party asserting the privilege bears the burden of proving that the attorney-client privilege applies to certain information. *See In re: Grand Jury (Markowitz),* 603 F.2d 469, 474 (3d Cir. 1979). "[I]n the absence of unusual circumstances, the privilege does not shield the fact of retention, the identity of clients, and fee arrangements." *In re Grand Jury Investigation*, 631 F.2d 17, 19 (3d Cir. 1980)(citations omitted). The Third Circuit has recognized an exception to the general rule in favor of disclosure when "so much of the actual communication had already been established, that to disclose the client's name would disclose the essence of a confidential communication." *U.S. v. Liebman,* 742 F.2d 807, 809 (3d Cir. 1984) (internal citations omitted). Further, attorney-client privilege does not protect fee agreements in most circumstances. *See Hayes v. Amer. Inter'l Grp.*, Civil Action No. 09–2874, 2013 WL 2414005, at *3 (E.D. Pa. June 4, 2013).

Further, while the attorney-client privilege does not preclude disclosure of the fee/retainer agreements in question, it is not apparent on the face of this request why such materials are "relevant to [the] party's claim or defense" or "reasonably calculated to lead to the discovery of admissible evidence," especially with respect to the nonparties' fee/retainer agreements. *See* Fed.R.Civ.P. 26(b)(1). As it is unclear from the parties' submissions and the arguments made at the teleconference as to the parties' positions on the issue of relevancy, the Court will defer ruling on the fee/retainer agreements until such time as the parties have had an opportunity to submit further briefing on this matter. Accordingly, the parties are directed to submit to the Court within seven (7) days of the entry of this Order, supplemental briefs not to

exceed five pages, addressing the relevancy of such fee/retainer agreements to the potential claims and defenses, specifically with respect to the fee/retainer agreements of the two nonparty witnesses. Further, to the extent that Defendants are seeking fee agreements between counsel and non-parties, the parties are to address any issues raised by Defendants requesting those agreements from Plaintiffs in the normal course of discovery.

### 2. Attorney Notes from "Group Meeting"

While the issue was not raised in motion papers filed by the parties outlining the remaining discovery issues requiring resolution by this Court, at the discovery conference counsel for Defendants mentioned his intent to compel production of notes taken by Plaintiffs' counsel at a group meeting between Plaintiffs, Plaintiffs' counsel, and the two nonparty witnesses represented by Plaintiffs' counsel regarding issues "closely related to [P]laintiffs' claims in the instant case against a common adversary- Lackawanna County" for the purpose of "learn[ing] the facts of each potential claim." (Doc. 53, at 3). Plaintiffs argued at the conference that these notes should not be produced as they clearly fall within the ambit of the work product doctrine.

The work product doctrine, codified in Rule 26(b)(3), provides that "work product can be produced upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by some other means."[2] *In re*

---

[2] "Rule 26(b)(3) distinguishes between ordinary work product protection, which can be overcome by a showing of 'substantial need' and an inability to 'obtain the substantial

*Cendant Corp. Securities Litig.,* 343 F.3d 658, 663 (3d Cir. 2003). The party asserting work product protection has the burden of demonstrating that the documents were "prepared in anticipation of litigation."*Maertin v. Armstrong World Indus., Inc.*, 172 F.R.D. 143, 148 (D.N.J. 1997)(quoting *Conoco, Inc. v. United States Dep't of Justice,* 687 F.2d 724, 730 (3d Cir. 1982)). "To determine whether a document was 'prepared in anticipation of litigation,' the relevant inquiry is 'whether in light of the nature of the document and factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'" *Id.* (quoting *Martin v. Bally's Park Place Hotel & Casino,* 983 F.2d 1252, 1258 (3d Cir. 1993)) (citations omitted). "Once the movant meets the burden of showing that the materials were prepared in anticipation of litigation, then the opposing party has the burden of overcoming the protection." *Id.* (citing *Hickman v. Taylor*, 329 U.S. 495, 512 (1947)).

In the instant matter at bar, it is undisputed that the materials were prepared in anticipation of litigation, as the group meeting was intended to "learn the facts of each potential claim."(Doc. 53, at 2). Defendants, however, offer little support in challenging the application of the work product doctrine. Specifically, Defendants have not demonstrated a substantial need for the notes at issue or that they are unable to obtain the substantial equivalent of the

equivalent of the materials by other means' without undue hardship, and opinion work product protection, which protects the 'mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.' Opinion work product protection is not absolute, but does require a far greater showing of necessity than ordinary work product." *Maertin*, 172 F.R.D. at 151 n.4. However, as the Defendants in this case have not overcome the assertion of privilege, this Court need not determine the level of Defendants' burden and whether the work product documents are ordinary or opinion work product. *Id.*

materials by other means without undue hardship. Moreover, to the extent Defendants claim that Plaintiffs waived the work-product privilege by organizing a group meeting between Plaintiffs and nonparty witnesses, Defendants have not met their burden of showing that Plaintiffs waived the work-product privilege, especially considering that such notes were kept confidential and not disseminated amongst the Plaintiffs or nonparty witnesses. *Maldonado v. New Jersey ex rel. Admin. Office of Courts-Prob. Div.*, 225 F.R.D. 120, 132 (D.N.J. 2004)(citing *Greene, Tweed of Delaware, Inc. v. DuPont Dow Elastomers, LLC.,* 202 F.R.D. 418, 423 (E.D.Pa.2001). As Defendant has not met his burden of overcoming the work-product privilege, this Court will deny Defendants' request to produce these notes.

### 3. Objections to Deposition Questioning Pertaining to "Group Meeting"

Defendants contend that the group meeting held between Plaintiffs' counsel, Plaintiffs, and two nonparty witnesses represented by Plaintiffs' counsel for the purpose of determining the claims at issue and to receive informed legal advice effectively waived attorney-client privilege. The crux of this issue is whether Plaintiff and the two nonparty witnesses formed a joint client relationship with the same lawyer. If a co-client relationship is found to exist, then the communications between those co-clients and their commonly retained attorneys are "in confidence" for privilege purposes.

As in single-client representation, the joint-client relationship begins "when the co-clients convey their desire for representation and the lawyer consents." *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 362 (3d Cir. 2007), *as amended* (Oct. 12, 2007)(citing Restatement (Third) of the Law Governing Lawyers § 14). While joint representation may arise by implication, a court

must be "careful not to imply joint representations too readily." *In re Teleglobe Commc'ns Corp.*, 493 F.3d at 362. Specifically:

> Clients of the same lawyer who share a common interest are not necessarily co-clients. Whether individuals have jointly consulted a lawyer or have merely entered concurrent but separate representations is determined by the understanding of the parties and the lawyer in light of the circumstances. Co-client representations must also be distinguished from situations in which a lawyer represents a single client, but another person with allied interests cooperates with the client and the client's lawyer.

Restatement (Third) of the Law Governing Lawyers § 75 cmt. c (internal cross-references omitted). "A wide variety of circumstances are relevant to the determination of whether two or more parties intend to create a joint-client relationship, particularly how the parties interact with the joint attorneys and with each other." *In re Teleglobe Commc'ns Corp.*, 493 F.3d at 363 (citing *Sky Valley Ltd. P'ship v. ATX Sky Valley Ltd.*, 150 F.R.D. 648, 652-53 (N.D. Cal. 1993)). "The keys to deciding the scope of a joint representation are the parties' intent and expectations, and so a district court should consider carefully (in addition to the content of the communications themselves) any testimony from the parties and their attorneys on those areas. *In re Teleglobe Commc'ns Corp.*, 493 F.3d at 363. The co-client relationship typically continues until such time as a client discharges the lawyer or the lawyer withdraws. *In re Teleglobe Commc'ns Corp.*, 493 F.3d at 362. However, courts have recognized that the relationship could potentially terminate by implication, which occurs "when it becomes clear to all parties that the clients' legal interests have diverged too much to justify using common attorneys." *In re Teleglobe Commc'ns Corp.*, 493 F.3d at 362 (citations omitted).

Based upon Plaintiffs' representation at the discovery conference that the group meeting was organized for the purpose of evaluating potential claims, discussing a potential litigation

strategy and determining whether joint representation would be in Plaintiffs' and the nonparties' best interest, this Court finds that the parties may have intended (though ultimately have not, at least to the extent the parties are not co-parties here) to form a co-client relationship when they came together with the purpose of seeking legal services or advice. Accordingly, Defendants cannot compel disclosure of the communications between counsel, Plaintiffs and the two nonparties at the meeting, because such communication is protected. However, Defendants are free to gather the factual information from Plaintiffs or the nonparty witnesses through a "myriad of discovery devises" and neither Plaintiffs nor the nonparty witnesses "can shelter the actual factual information known or imparted to them. But it is [Defendants'] burden to employ those devises and frame the inquiries in a manner that nets the factual information without intruding into the actual privileged documents and communications." *Serrano v. Chesapeake Appalachia, LLC*, 298 F.R.D. 271, 282 (W.D. Pa. 2014). Hence, the Court will deny Defendants' request to compel disclosure of such communications from the group meeting on the basis that attorney-client privilege protects that privileged information sharing between Plaintiffs, the nonparties, and their shared counsel.

## II. CONCLUSION

Based on the foregoing, together with those issues discussed and resolved at the conference in this matter, the Court makes the following rulings with respect to the outstanding discovery issues in this case:

1. Defendants shall produce any outstanding verifications, the DEC sheet from Travelers and a coverage letter from Ironside by **May 22, 2015**;

2. Defendants shall produce all documents in existence that are responsive to Plaintiffs' document requests, including but not limited to document requests 8, 9, and 27 by **June 5, 2015**, together with verification that all responsive, non-

privileged documents have been produced in their entirety. Any unresolved objections with respect to such documents shall be submitted to the court for review;

3. Plaintiffs' request for a bifurcated Rule 30(b)(6) deposition shall be held in abeyance pending Defendants' production of the aforementioned documents and Plaintiffs' review those documents produced. Should Plaintiffs discover that the document production is deficient, a renewed motion for a Rule 30 (b)(6) deposition may then be submitted to the Court;

4. Plaintiffs' request to conduct an additional twenty-two (22) depositions shall be **GRANTED** only with respect to those proposed individuals named in the list Plaintiffs provided to the Court at the discovery conference. Plaintiffs are directed to reduce the total number of deponents if it is discovered that certain deposition testimony would prove duplicative or unnecessary;

5. Defendants' request to compel the production of the notes taken by counsel for the Plaintiffs at the group meeting is **DENIED**. Further, the communications between the Plaintiffs, the two nonparty witnesses, and their shared counsel that took place at the group meeting is privileged, and therefore, not discoverable.

6. The Court will **DEFER** its ruling on Defendants' request for the production of the fee/retainer agreements until such time as the parties' have been given the opportunity to submit further briefing on the matter. Accordingly, the parties are directed to submit to the Court, on or before **Tuesday, May 26, 2015**, supplemental briefs <u>not to exceed five pages</u>, limited to addressing the relevancy of Plaintiffs' and the nonparty witnesses' fee/retainer agreements to Defendants' potential claims and defenses.

An appropriate Order will follow.

**Dated:** May 19, 2015

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States Magistrate Judge**